ALMON KIDDER, Exr.

*v.*

LEOTA DOUGLAS *et al.*

*Opinion filed February 21, 1902.*

1. WILLS—*one taking under will cannot set up title which will defeat the will in part.* If the wife elects to take under her husband's will, thereby receiving a greater share of his estate than she would have taken under the law, neither she nor her executors can set up title which would defeat the will in part, even though the title to the property disposed of by such part was in the wife at the time of the execution of the will and at the testator's death.

2. SAME—*when widow must be held to confirm all provisions of will.* If the widow enjoys the income from her husband's entire estate for many years by virtue of the provision made for her in his will, she must be held to have accepted all the provisions of the will, and thereby confirmed that part thereof which gave the fee to property owned separately by her to other parties.

APPEAL from the Circuit Court of Warren county; the Hon. JOHN A. GRAY, Judge, presiding.

MELVIN A. KIDDER, for appellant:

Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims, in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both. 2 Story's Eq. Jur. sec. 1075.

In order to raise a case of election under a will it must have been the intention of the donor to dispose of property belonging to the donee, and by the same instrument to give a benefit to the latter out of the testator's own property. 2 Am. & Eng. Ency. of Law, (2d ed.) p. 65, note 6, and cases cited.

In order that an act may amount to an election two things are essential: First, it must be clear that the person alleged to have elected was aware of the nature and extent of his rights; second, it must be shown that,

having that knowledge, he intends to elect. 2 Am. & Eng. Ency. of Law, (2d ed.) p. 97, and cases cited.

The burden of showing acts of election is upon him who alleges that an election has been made. 2 Am. & Eng. Ency. of Law, (2d ed.) p. 97, and cases cited.

Where a party who has not been called on to elect, holds both the property given to him by the will and the property belonging to himself which the testator has attempted to bestow upon another, or receives the rents and profits thereof, it cannot be said that he has made an election, for the right of choosing between the two has not been exercised. 2 Am. & Eng. Ency. of Law, (2d ed.) p. 101, and cases cited.

GRIER & STEWART, for appellees:

Mary Ann Douglas having accepted a beneficial interest under the will of Samuel Douglas could not set up any title which would defeat any part of his will. *Woolley* v. *Schrader*, 116 Ill. 29; *Gorham* v. *Dodge*, 122 id. 528; *Van-Schaack* v. *Leonard*, 164 id. 602; *Buchanan* v. *McLennan*, 192 id. 480.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by Leota Douglas and Samuel L. Douglas, the children and only heirs-at-law of Hercules Douglas, deceased, (a son of Samuel Douglas and Mary Ann Douglas, both deceased,) against Almon Kidder, executor of the last will and testament of Mary Ann Douglas, deceased, praying for the construction of the last will and testament of said Samuel Douglas, and that the title to certain lands described in said bill may be found to be in said Leota and Samuel L. Douglas, as tenants in common, in fee simple, and for an accounting. The defendant answered, averring that the title to said lands was held by him in trust, under and by virtue of the terms of the last will and testament of Mary Ann Douglas, deceased, and denying that the complainants

were entitled to the relief prayed for. A replication was filed and the cause was heard upon proofs taken in open court and a decree entered in accordance with the prayer of the bill, and the defendant has prosecuted an appeal to this court.

Samuel Douglas died August 24, 1891, leaving a last will and testament, executed in the month of June, 1884, which was admitted to probate on the 11th day of September, 1891. Mary Ann Douglas was named as executrix therein. Her co-executor having declined to act, she was duly appointed and qualified. The will of Samuel Douglas, in part, is as follows:

"*Second*—I give, devise and bequeath unto the heirs of my son, Hercules Douglas, the house and lot on which he resides, to-wit, lot three (3) in block eight (8) of the old town plat of the city of Monmouth.

"*Third*—For the purpose of paying off my indebtedness, I hereby authorize, empower and direct my executors hereinafter named to sell my farm near the fair grounds, containing one hundred acres, more or less, at public or private sale, as they may think best, and out of the proceeds pay my indebtedness.

"*Fourth*—All the rest, residue and remainder of my property, real, personal and mixed, after the payment of debts and funeral expenses and the provision hereinbefore made for the heirs of my son, Hercules Douglas, I give to my wife, Mary Ann Douglas, for her use, benefit and behoof, during her life, and at her death whatever may remain of said property I desire to go to the heirs of my son, Hercules Douglas."

The house and lot referred to in the second paragraph of said will, at the time of the execution thereof, belonged to Mary Ann Douglas, and was occupied by Hercules Douglas and his family as a home, under an arrangement made with Samuel Douglas, his father. On November 27, 1888, Mary Ann Douglas sold said house and lot to J. D. Suggs, and gave him a bond for a deed.

Suggs obtained possession thereof in the month of August, 1890, by virtue of a forcible detainer suit against the widow and heirs of Hercules Douglas, deceased,— Hercules Douglas having died prior to the death of Samuel Douglas,—and on the 20th of October, 1891, Suggs, having paid on the purchase price of said house and lot to Mary Ann Douglas only such sums of money as he had collected as rent from the tenants who had occupied the said premises, re-sold the same to her and surrendered his bond for a deed.

On September 20, 1879, Samuel Douglas was the owner in fee simple of the farm referred to in the third paragraph of said will. Having become involved in litigation, on that date, for and in consideration of love and affection and the sum of ten dollars in hand paid, he conveyed the same by deed to his wife, Mary Ann Douglas, which deed was duly recorded. He, however, remained in possession and received the rents and profits thereof until the year 1888, when he became demented, and in August of that year Mary Ann Douglas was appointed his conservator.

Samuel Douglas, at the time of making his will and at the time of his death, owned in fee simple a business block and four tenement houses situated in the city of Monmouth, the combined rental value of which was about $80 per month. From the date of the death of Samuel Douglas to the time of her death, on March 26, 1901, Mary Ann Douglas received all of the rents from said real estate and appropriated the same to her own use. By her last will and testament, which was duly admitted to probate, after making certain specific bequests, she devised all of her real estate to her executors in trust, for the use of Leota Douglas and Samuel L. Douglas, or the survivor of them, during their natural lives, and in the event they should both die without leaving issue surviving them or either of them, then the property was to be used for the establishment of an aged woman's

home.  George E. Armsby having declined to act, Almon Kidder, the other executor named in said will, qualified, and is in possession of said real estate, claiming to hold the same as trustee under the last will and testament of Mary Ann Douglas, deceased.

Mary Ann Douglas, by the last will of Samuel Douglas, took a much greater interest in his estate than she would have taken under the law had there been no will, and having accepted such interest, she, or her executor in case of her death, will not be permitted to set up title to property, the effect of which would be to defeat, in part, said will.  In *Buchanan* v. *McLennan,* 192 Ill. 480, on page 482 we say: "The doctrine of election, as between inconsistent rights, is well established, and its most frequent application has been made to persons taking title under wills, and as applied to such it means they may not at the same time take under a will and contrary to it. He who would accept the bounty of another must do so upon such terms and conditions as the donor may choose to impose.  One who takes under a will cannot, therefore, insist that the provisions in his favor shall be executed while those to his prejudice be annulled." In *Woolley* v. *Schrader,* 116 Ill. 29, on page 37 the following language from 2 Jarman on Wills is quoted with approval: "He who accepts a benefit under a will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it." In *Carper* v. *Crowl,* 149 Ill. 465, it is said (p. 476): "If a testator, intending to dispose of his property, includes in the disposition property of another person and at the same time gives to such other person an interest in the estate of the testator, such person will not be permitted to defeat the disposition made by the will and at the same time take under it.  He is put to his election whether he will retain his own property or take the benefit conferred by the will,  *  *  *  for if the donee be permitted to accept the benefit and at the same time decline the bur-

den, it is to defraud and defeat the intent and design of the donor."

Samuel Douglas by his will gave to Leota and Samuel L. Douglas, subject to the payment of his debts, the fee in all his property, including the house and lot and farm mentioned in the second and third paragraphs of his will, and by the fourth paragraph thereof gave to Mary Ann Douglas the income of his entire estate, which was a much more valuable interest in his estate than she would have received but for the will. During the ten years she survived him she received rentals to the amount of about $80 a month, which, had it not been for the will, would in part have gone to appellees. Had she seen fit she could have declined to have accepted the provision made for her by the will, and have retained the house and lot and farm, but having elected to accept the provisions made for her by the will, she or her personal representative will not now be permitted to defeat any of the provisions of the will, but will be held to have accepted the same in its entirety, and the provisions thereof which give to appellees the house and lot and farm must be held to be effective and to pass the title thereto to them, as against her or her executor. In *Gorham* v. *Dodge*, 122 Ill. 528, on page 535 this court approved the language of Chief Justice Shaw in *Hyde* v. *Baldwin*, 17 Pick. 303, where the rule was stated as follows: "It is now a well settled rule in equity, that if any person shall take any beneficial interest under a will he shall be held thereby to confirm and ratify every other part of the will,—or, in other words, a man shall not take any beneficial interest under a will and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat or in any way prevent the full effect and operation of every part of the will." The testatrix of the appellant having enjoyed the income of her husband's entire estate for ten years by virtue of the provisions made for her in his will, she must be held

to have accepted all the provisions thereof, and thereby confirmed that part of the will which gave the fee to her house and lot and farm to the appellees.

The decree of the circuit court will be affirmed.

*Decree affirmed.*